**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **GIBSON FLEMING, /d/b/a** | § | |
| **GIBSON'S ESSENTIALS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **Civil Action No.** |
| | § | |
| **LUX GLOBAL, Inc.  a California** | § | |
| **Corporation, d/b/a TOPLUX** | § | |
| **NUTRITION,** | § | |
| | § | |
| *Defendant.* | § | **Jury Trial Demanded** |

<u>**VERIFIED COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**</u>

Plaintiff, Gibson Fleming, d/b/a Gibson's Essentials, ("Gibson") files this Verified
Complaint and Application for Temporary Restraining Order, Preliminary Injunction, and
Permanent Injunction against Lux Global, Inc. a California corporation, d/b/a Toplux Nutrition
("Toplux"), and in support shows the Court as follows:

## I.   <u>INTRODUCTION</u>

Toplux is a seller of various vitamin supplements including but not limited to Magnesium
Complex 8 Essential Magnesium Supplement. Gibson is in the business of purchasing and
reselling items on Amazon in accordance with the First Sale Doctrine, as adopted in Federal case
law, which establishes that a trademark owner's rights are extinguished after the authorized initial
sale of a product. This doctrine protects resellers who merely stock display and resell genuine
trademark goods without alteration or misrepresentation. Gibson purchased Toplux's vitamin
supplements from its authorized Tik Tok Shop marketplace. Thereafter, Toplux wrongfully issued
a falsified "counterfeit notice" with Amazon marketplace resulting in potential termination of

Gibson's storefront marketplace from Amazon. This action constitutes irreparable harm *per se* due to termination of his business operations. This action seeks to enjoin the termination of Gibson's business and seek monetary damages for Toplux's tortious activities. In summary, in contravention of the First Sale Doctrine, Toplux continues to falsely claim that Gibson was selling counterfeit products on Amazon, which culminates in Amazon placing a counterfeit notice on Gibson products and terminating its sales. These continuing losses will destroy Gibson's business; therefore, Gibson is seeking both damages and injunctive relief to restrain the unlawful actions of Toplux.

## II. <u>PARTIES</u>

1.      The Plaintiff, Gibson Fleming, /d/b/a Gibson's Essentials ("Gibson"), is an adult individual with a principal place of business located at 1615 West Chelsea Place, El Lago, TX 77586 and trades and does business as Gibson's Essentials.

2.      Gibson is in the business of lawfully acquiring and reselling various consumer products through Amazon and other internet-based storefronts.

3.      Gibson resells products through various channels including through an Amazon storefront identified as "Gibson's Essentials" beginning in 2022.

4.      Lux Global, Inc., t/d/b/a Toplux Nutrition is a California corporation with a principal place of business located at 1146 N. Central Ave., Suite 662 Glendale, CA 91202

5.      Toplux sells various items under the Toplux™ registered trademark serial number 88655796 throughout the United States.

6.      Gibson purchased for resale Toplux product, specifically magnesium Complex 8 Essential Magnesium Supplement-3 pack bundle from the Tic-Tok shop store.[1]

---

[1] A copy of the receipts is attached hereto as Exhibit A.

### III. JURISDICTION AND VENUE

7.      Jurisdiction is conferred by this Court on this Court by §39 of the Lanham Act, 15 U.S.C. §1121, and by 28 U.S.C. §§1331 and 1338.

8.      The Court has supplemental jurisdiction over Gibson state law claims under 28 U.S.C. §1367.

9.      Personal jurisdiction is conferred on this Court by Texas Civil Practice and Remedies Code Section 17.042.

10.      Venue is appropriate in this district pursuant to 28 U.S.C. §§1391(b) and (c) because Lux Global, Inc. is a corporation subject to personal jurisdiction of this Court.

### IV. FACTUAL ALLEGATIONS

11.      As noted above, Gibson resells products through various channels, including through an Amazon storefront named "Gibson's Essentials" beginning in 2022.

12.      In strict compliance with Amazon's policies and brand standards, Gibson ensures product authenticity through rigorous inspections, including validation of serial numbers, packaging and supplier credentials.

13.      Beginning in December 1, 2025, Gibson began purchasing Toplux™ products through the Toplux Storefront on TikTok Shop and other marketplaces.[2]

14.      Between December 1, 2025 and January 30, 2026, the Gibson's Essential storefront sold roughly $3,065.40 worth of Toplux™ products.

---

[2] *See* Exhibit B, Screen Shot of Toplux Nutrition Official Storefront.

15.    On Friday, February 20, 2026, Gibson received notification from Amazon.com that "your account is at risk of imminent deactivation" due to a report that's counterfeit products being sold in violation of owner's rights for Toplux.[3]

16.    The Amazon notification indicates that Toplux reported that the items sold by Gibson, that were purchased from the Tic-Tok shop, were counterfeit and inauthentic.

17.    Gibson resold Toplux's genuine and authentic goods on Amazon after purchasing them from different sources including, but not limited to, the Toplux TikTok Shop Storefront.

18.    Gibson is in the business of lawfully acquiring and reselling various consumer and household products for a profit, pursuant to the First Sale Doctrine.

19.    Gibson received an Amazon.com order for ASIN: BOCRY2SUPV, which Gibson suspects was a "test buy" from Toplux or their agents.

20.    The order was shipped by Amazon with a transparency code on the packaging to verify the authenticity on the unit, as required by Amazon for acceptance of the products at their fulfillment center, and which would have allowed the purchaser to verify the product was authentic.

21.    On February, 20, 2026 at 10:01 AM, Gibson received notifications from Amazon.com that Toplux had reported that Gibson was listing counterfeit products, resulting in Amazon directing that Gibson's account will be deactivated unless the appeal is filed within 3 days. According, the within complaint is being issued to Amazon.

---

[3]*See* Exhibit "C1" Your Amazon Selling Account is at Risk of Deactivation; Exhibit "C2" Speak to Account Health Support Now; and Exhibit "C3" Your Amazon Listings in United States are Subject to Additional Approval.

### A. *Amazon Online Marketplaces*.

22.     Amazon is the world's largest online retailer.

23.     According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined.[4]

24.     Amazon's online e-commerce platform allows for third-parties, like Gibson, to sell products on its e-commerce platform.

25.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

26.     Since approximately January 2022, Gibson has had a contractual and business relationship with Amazon, such that Gibson was and is permitted to sell products on Amazon's e-commerce platform.

27.     Third-party sellers, like Gibson, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Gibson has the online equivalent of a brick-and-mortar store.

28.     Nearly all of Gibson's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

29.     Once Gibson acquires products from reputable sources, Gibson resells the same products on Amazon at a profit.

---

[4] *See* JP Mangalindan, *Amazon is now worth more than America's 8 largest retailers combined*, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailers-combined-124101625.html (last visited September 10, 2025).

30.    In general, transactions on Gibson's Amazon storefront are completed by Amazon, whereby Amazon ships Gibson's products from an Amazon warehouse (known as "Fulfilment by Amazon" or "FBA").

31.    Gibson has invested significant efforts into building a successful and reputable Amazon storefront.

32.    Any harm that comes to the relationship between Gibson and Amazon creates a potential for serious and irreparable injury to Gibson.

### B.  Amazon Transparency Program.

33.    Amazon also has a Transparency Program to verify authenticity of items.

34.    Amazon uses unique product identifiers for each distinct product on its marketplace, known as an "ASIN."

35.    Each unique product offering is assigned only one ASIN to maintain consistency and prevent duplication.

36.    Sellers may join an existing ASIN by adding their inventory as an "offer" on an ASIN listing, competing on price and other factors.

37.    Multiple ASINs for the same product are prohibited, and Amazon requires sellers to join the existing ASIN as an offer in order to ensure a streamlined and fair marketplace.

38.    Individual product units have a unique serialized code known as an Amazon Transparency Code, which are applied by brands or manufacturers.

39.    In order to prevent counterfeit goods from entering the marketplace, each Amazon Transparency Code is scannable via Amazon's mobile app or systems, allowing sellers, buyers and Amazon to confirm a products authenticity by linking it to the brand's registered supply chain.

40.    Amazon.com takes counterfeit complaints by brands very seriously.

41.     It is standard practice for Amazon to block the ability to sell an ASIN underneath a brand that you have received a counterfeit complaint on.

42.     Additionally, Amazon maintains account metrics referred to as "Account Health," consisting of a numeric grade of points between 0-1000.

43.     Each seller on Amazon begins with 200 Account Health points and may gain additional points by selling products on Amazon.com with no issues arising.

44.     When a brand submits a counterfeit complaint against a seller, Amazon assesses Account Health deductions against the seller for policy violations.

45.     If multiple counterfeit complaints are submitted against a seller, Amazon may also assess "repeat offender" violations against sellers.

46.     If Account Health drops below a certain threshold, a seller is automatically deactivated from selling on Amazon.com.

47.     While Amazon takes counterfeit claims seriously, Amazon does not conduct independent investigations on a seller or product for a complaint beyond verifying that the complainant is the trademark owner and verifying that the complaint has stated a valid reason for delisting, such claiming the product is counterfeit.

48.     When making a complaint on Amazon.com, a complainant is prompted to select between three options which best describe their issue:

49.     Upon information and belief, Toplux indicated product is counterfeit which defamed and caused substantial harm to Gibson.

### C. *Toplux Attempts to Stifle Competition by Filing False Intellectual Property Complaints.*

50.    Upon information and belief, Toplux seeks to increase its profits by controlling the distribution and pricing of its products, including the Toplux™ Products, through unlawful means.

51.    Unable to eliminate third-party sales simply because they are "unauthorized," Toplux sent fraudulent IP complaints to Amazon alleging that Gibson was selling counterfeit products.

52.    As demonstrated below, Toplux has engaged in a coordinated effort to preclude Gibson from reselling genuine Toplux Products on online marketplaces by false allegations of intellectual property infringement and defamation.

53.    The purpose of these false complaints and defamatory statements was to prevent Gibson from selling genuine Toplux Products on Amazon.

54.    The purpose of these false complaints was to damage Gibson's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Gibson.

55.    Because Gibson sells only genuine products through its Amazon storefront; Toplux has no legitimate intellectual property claim(s) against Gibson.

56.    Under the First Sale Doctrine, Gibson is lawfully permitted to re-sell Toplux Products without violating the intellectual property rights or other legal rights of Toplux.

57.    The First Sale Doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to re-sellers, so long as the re-sellers are selling authentic, unaltered products.

58.    It is well-known among brand owners, such as Toplux, that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

59.    As one Amazon expert explained:

In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.

***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.[5]

60.     On information and belief, Toplux was, at all relevant times, aware of the foregoing Amazon policy with respect to reports of intellectual property infringement.

61.     Toplux was, at all relevant times, aware that Amazon will act on reports that a product is "counterfeit," regardless of the truth of the report.

62.     The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

63.     Toplux filed complaints with Amazon that alleged that Gibson was selling "counterfeit" products, despite having access to the numerous orders Gibson has placed.

64.     Toplux knew, or should have known, that these allegations were false.

65.     Toplux's allegations of counterfeiting were objectively unreasonable sham submissions made in bad faith in an effort to prevent Gibson's resale of genuine Toplux Products on Amazon's e-commerce platform.

---

[5] *See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/ (emphasis added) (last visited September 10, 2025).

66.    The complaint submitted to Amazon was signed under penalty of perjury by an employee or agent of Toplux.

67.    For example, when submitting an infringement report to Amazon, an intellectual property rights owner must read and accept the following statements:

> "I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

> "I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

> "I understand that, if accepted, the information included in this report may be shared by Amazon with all the reported sellers, with the exception of any order ID number(s)."

> "I understand that submitting false or inaccurate complaints against other sellers may result in the suspension or termination of my Amazon selling privileges."[6]

68.    Once confirmed through discovery, all individual(s) responsible for the false intellectual property complaints described herein will be added to Toplux as a Defendant in this action.

69.    As noted above, Toplux identified Gibson's product as counterfeit.

70.    Toplux identified Gibson's product as "counterfeit" when the product was genuine.

71.    Toplux identified Gibson's product as "counterfeit" in the above report when the product was authentic, manufactured, and distributed by Toplux.

72.    On information and belief, Toplux's allegation that the above Toplux Products were counterfeit was knowingly false and made in bad faith.

---

[6] Report Infringement, https://www.amazon.com/report/infringement (last visited September 10, 2025).

73.    Gibson contacted Amazon in accordance with Amazon's procedures and challenged Toplux's false report and allegations of counterfeiting.

### D.  Toplux Refused To Retract Its False Reports.

74.    Gibson has sought in good faith to resolve the above-referenced dispute with Toplux. Toplux, despite having no support for their allegations, refused to retract the complaint or clear the Amazon account.

75.    To date, Toplux has failed to provide support for its allegations that Gibson has sold "counterfeit" Toplux Products. Yet, Toplux has refused to retract their complaint.

## V.  CAUSES OF ACTION

76.    As a result of the above false rights complaints, Gibson's listing relating to Toplux Products have been suspended, resulting in loss of revenue.

77.    It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Gibson's ability to sell any and all products on Amazon would be lost.

78.    On information and belief, Toplux was aware that complaints to Amazon, particularly those alleging the sale of counterfeit products, result in selling suspensions.

79.    On information and belief, Toplux has used these same tactics, namely filing false infringement complaints, against other Amazon sellers.

80.    At no time has Gibson ever sold counterfeit Toplux Products.

81.    The Toplux Products sold by Gibson were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

82.    Toplux knowingly made false intellectual property rights complaints against Gibson.

83.    Upon information and belief, the true purpose of these complaints was to ensure the suspension of Gibson's marketplace listings, control pricing and eliminate fair competition.

84.    As result of Toplux's false complaints, Gibson's performance metrics were irreparably damaged.

85.    It is well-known that as much as 90% of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page where customers can add a product to their cart.

86.    Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics.

87.    Toplux's false complaints have damaged Gibson's metrics and caused Gibson to lose the "buy box" on many of its product listings.

## A.    <u>Declaratory Judgment of Non-Infringement of Trademark</u>

88.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

89.    Toplux has asserted claims against Gibson for purported infringement of its purported trademark rights in the products associated with Toplux.

90.    Gibson contends that it has never infringed on any of Toplux's purported trademarks, and in particular, its purchase and resale of products associated with Toplux are lawful under the First Sale Doctrine.

91.    Toplux requested removal of Gibson's products associated with Toplux or otherwise complained to Amazon about the alleged infringement.[7]

---

[7] A copy of the Notice is attached as Exhibit "C"

92.    Upon information and belief, Toplux plans to continue to interfere with Gibson's business in the aforementioned manner for the indefinite future.

93.    Gibson seeks to sell its Toplux products on Amazon and elsewhere on the Internet, but as a result of Toplux's actions, is unable to do so. As a result, Gibson continues to lose profits and suffer damage to its business and reputation.

94.    As a result of Toplux's assertion of claims against Gibson for infringement of Toplux's purported trademark rights, there is a definite and concrete dispute touching the legal relations of the parties to this action.

95.    There is a real and actual controversy between Gibson and Toplux regarding whether the continued sale of Gibson's products is lawful or whether it infringes Toplux's rights, and whether Gibson has engaged in selling counterfeit products, which Gibson has not done.

96.    The Court has the authority to issue a Declaratory Judgment to settle the relative rights, obligations, and limitations of the Parties. TEX. CIV. PRAC. & REM. CODE § 37.003(a).

97.    A Declaratory Judgment is appropriate only when there is a justiciable controversy about the rights and status of the Parties (as there are in this case), and the declaration would resolve the controversy.

98.    The controversies among the Gibson and the Toplux are real because both Gibson and Toplux claim ownership and/or the superior right to use the Mark.

99.    The controversy must be real and substantial, involving a genuine conflict of tangible interests and not merely a theoretical dispute. The facts of this case show that the controversy is real and substantial, involving a genuine conflict of tangible interests and not merely a theoretical dispute.

100.    Gibson therefore seeks an order declaring that Gibson does not infringe Toplux's purported trademark rights and the First Sale Doctrine permits Gibson to sell Toplux's products without any restriction.

**B.  Violation Of Section 43(A) of the Lanham Act, 15 U.S.C. §1125(a)**

101.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

102.    Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides that one who misrepresents the nature, characteristics, or qualities of another's goods is libel in a civil action brought by one who believes that he "is or is likely to be" damaged by this misrepresentation.

103.    Toplux manufactures and distributes Toplux™ Products and places such products into the stream of commerce.

104.     Gibson stocks, displays, and resells new, genuine Toplux™ Products, each bearing a true mark.

105.    Toplux has submitted numerous complaints to Amazon that state that Gibson sold counterfeit Toplux™ Products and infringed, inter alia, the Toplux™ Registrations.

106.    The Toplux™ Products sold by Gibson were not counterfeit.

107.    Toplux's complaints have caused the suspension of Gibson's selling privileges as they relate to Toplux™ Products.

108.    Toplux's complaints continue to, once again, threaten to cause the suspension of Gibson's selling privileges as they relate to any and all products.

109.    Toplux's complaints put Gibson in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

### C.  Tortious Interference with Contractual and Business Relations

110.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

111.    Gibson has had an advantageous business relationship with Amazon, which allows Gibson to sell on Amazon's e-commerce platform as a third-party seller.

112.    Gibson is also in a contractual relationship with Amazon, including through the Amazon Business Services Agreement.

113.    At all relevant times, Toplux was aware of Gibson's business relationship with Amazon, as well as Gibson's contractual relationship with Amazon.

114.    At all relevant times, Toplux was aware of Amazon's terms and conditions, as well as the advantageous business relationship that comes with being an Amazon seller.

115.    Toplux intentionally and improperly interfered with Gibson's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Gibson was selling counterfeit products.

116.    Toplux's conduct directly and proximately caused disruption of Gibson's relationship and contract with Amazon.

117.    Topluxs intended to cause Amazon to suspend Gibson ability to sell Toplux™ Products on Amazon and therefore interfere with the business relationship Amazon had with Gibson.

118.    Toplux had actual knowledge that their actions would cause Amazon to suspend Gibson's ability to sell Toplux™ Products on Amazon.

119.    Toplux's accusations of counterfeiting, made directly to Amazon, were for the improper purpose of suppressing competition.

120.     Toplux's actions interfered with Gibson's business relationship with Amazon and proximately caused Gibson's listing of Toplux™ Products to be suspended.

121.     The intentions of Toplux are demonstrated by the fact that Toplux was unable to provide any evidence in support of their complaint and, nevertheless, refused to withdraw their complaint.

122.     The intention of Toplux is demonstrated by the fact that, on information and belief, Toplux performed test purchases for counterfeit determination prior to alleging that the products sold by Gibson were counterfeit because they knew that the products were not counterfeit.

123.     Toplux's accusations were false and were made maliciously and with ill will.

124.     Gibson has been damaged by suspension of these listings by losing revenue related to Toplux™ Products.

125.     Gibson is entitled to damages, costs and attorneys' fees as allowed by law.

126.      Gibson has suffered injury and, unless Toplux is enjoined from such activity, will continue to suffer injury.

### D.  Commercial Defamation

127.     Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

128.     Toplux published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff sold "counterfeit" Toplux™ Products.

129.      Plaintiff did not sell counterfeit Toplux™ Products.

130.     Toplux's false statements were injurious to Gibson's business because they caused Amazon to suspend Gibson's selling privileges related to Toplux™ Products.

131.   Toplux's false statements were injurious to Gibson's business because they caused Amazon's and Gibson's customers to avoid purchasing products from Gibson or had products returned by Amazon.

132.   Upon information and belief, Toplux was, at a minimum, negligent in making the false statements to Amazon because, among other things, Toplux knew that Gibson sells genuine products.

133.   Toplux's false statements are not protected by any privilege.

134.   Toplux acted with actual malice or with reckless disregard for the truth of the matter contained in Toplux's false statements to Amazon and Gibson's customers.

135.   False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation per se.

136.    Here, Toplux published statements that Gibson was engaged in trademark counterfeiting, which is a criminal offense.

137.   Toplux's false statements constitute defamation per se.

138.   Additionally, Gibson incurred special harm, including, but not limited to, suspension from selling Toplux™ Products and damage to its relationship with Amazon and its customers.

139.   Whether by defamation per se or by special harm, Gibson has suffered injury as Gibson's selling privileges related to Toplux™ Products have been suspended and Gibson has lost sales of Toplux™ Products and other products.

140.   Gibson is entitled to damages, costs, and fees as allowed by law.

141.   Gibson has suffered injury and, unless Toplux is enjoined from such activity, will continue to suffer injury.

**E.  Trade Libel**

142.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

143.    Toplux knowingly published false and derogatory statements regarding Gibson's business.

144.    Specifically, Toplux published false and materially derogatory statements that Gibson was selling counterfeit Toplux™ Products.

145.    Toplux's statements that Gibson was selling counterfeit Toplux™ Products were calculated to prevent others (including Amazon and Amazon's customers) from doing business with Gibson and interfered with Gibson's business relationships with these parties.

146.    As discussed above, on information and belief, Toplux knew that submitting false complaints to Amazon would cause Amazon to suspend Gibson's product listings.

147.    Toplux's false and derogatory statements to Amazon were a substantial factor in inducing these parties not to conduct business with Gibson.

148.    Gibson suffered special damages as a result of Toplux's statements in the form of lost dealings.

149.    As a result of Toplux's false rights owner complaint, Gibson's product listings were removed from Amazon resulting in a direct and immediate loss in revenue.

150.    Gibson is entitled to damages, costs, and fees as allowed by law.

151.    Gibson has suffered injury and, unless Toplux is enjoined from such activity, will continue to suffer injury.

**F.** **False and Misleading Representation, Unfair Competition, and Product Disparagement Pursuant To 15 U.S.C. §1125**

152.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

153.    This is a claim for false or misleading representation of fact, unfair competition, and product disparagement under 15 U.S.C. § 1125(a).

154.    Gibson and Toplux compete in vitamin sales.

155.    Gibson has a commercial interest in its commercial and business reputation.

156.    Gibson has established a business reputation as a popular and trusted seller of vitamin products on Amazon's online marketplace.

157.    Toplux knowingly made false, misleading, disparaging and defamatory statements in commerce through the notices to Amazon of infringement relating to the products associated with Gibson's Storefront. These statements actually deceived Amazon and are likely to deceive and confuse the public (i.e., Amazon's marketplace users) into believing that Gibson's products are counterfeit, thereby materially affecting their decision and ability to purchase from Gibson's Storefront.

158.    Toplux's takedown notices were designed to advance their business interests by removing Gibson's listings from the Amazon marketplace thereby increasing Toplux's market share of customers interested in purchasing Toplux Toplux™ products.

159.    Toplux made the above-referenced false and disparaging statements in commercial promotion of Toplux's own product, in direct competition with Gibson's resale product, in an effort to drive sales away from Gibson and toward Toplux.

160.    Upon information and belief, Toplux's false and misleading representations were sufficiently disseminated to actual and prospective customers by way of the notices to Amazon.

161.    Upon information and belief, Toplux's false and misleading representation of Gibson's alleged infringement have misled, confused and deceived customers and prospective customers as to Gibson's reputation.    Further, these misrepresentations have the capacity to continue misleading, confusing, and deceiving Gibson's customers and prospective customers.

162.    The false and misleading representations had a material effect on Gibson's customers' and prospective customers' decisions to do business with Gibson because as a result of Toplux's Notices, Amazon has replaced customer visibility of products offered by other third-party sellers with higher performance ranks on Amazon.

163.    Toplux made these false and misleading representations in interstate commerce and these false and misleading representations affect interstate commerce.

164.    Gibson is informed and believes, and thereon alleges, that Toplux had no support whatsoever for the takedown notices that Toplux submitted to Amazon, and Toplux acted with the intent that Gibson's offerings be removed from the Amazon marketplace in an effort to gain more market shares by forcing consumers to purchase Toplux™ branded products directly from Toplux. By eliminating the secondary market created by Gibson, Toplux obtained an economic advantage by direct sales that would have otherwise gone to the secondary market. Toplux thus, acted knowingly, willfully and maliciously with intent to injure Gibson.

165.    Gibson's injuries fall within the zone of interest protected by the Lanham Act because Toplux's false advertising and disparaging misrepresentations have caused Gibson to suffer a loss of goodwill, a loss of sales, and damage to its commercial and business reputation.

166.    Toplux's wrongful acts as alleged in this Verified Complaint constitute false or misleading representation of fact, unfair competition and product disparagement under 15 U.S.C. § 1125(a).

167.    The damage to Gibson's economic and reputational injuries were directly caused by Toplux's false and misleading representations.

168.    As a direct and proximate result of Toplux's actions, constituting false or misleading representation of fact, unfair competition and product disparagement, Gibson has been damaged (both in the form of lost sales and indirect in the form of loss of goodwill/reputation) and is entitled to monetary relief in an amount to be determined at trial.

169.    As a direct and proximate result of Toplux's actions, constituting false or misleading representation of fact, unfair competition and product disparagement, Gibson has suffered and continues to suffer great and irreparable injury, for which Gibson has no adequate remedy at law.

170.    Toplux will continue their actions, constituting false or misleading representation of fact, unfair competition, and product disparagement, unless enjoined by this Court.

## G.  Unfair Competition

171.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

172.    Upon Gibson's investigation, information and belief, Toplux has diverted Gibson's goodwill with its customers and interfered with or attempted to interfere with Gibson's contractual and business relationships with Amazon.com and Gibson's customers for Toplux's own unlawful gain. Such conduct constitutes unfair competition under the common law of the State of Texas.

173.    Toplux's takedown notices were designed to advance their business interests by removing Gibson's listings from the Amazon marketplace though fraudulent misrepresentations thereby increasing Toplux's market share of customers interested in purchasing Toplux™ branded products.

174.    For the purpose of influencing customers and potential customers to purchase Toplux's goods, Toplux made false and/or misleading written statements of fact concerning the goods sold by Gibson in the Amazon marketplace, including without limitation reporting to Amazon.com that the goods Gibson was selling on Amazon.com were counterfeit, while knowing Gibson had obtained items from the brand's own TikTok Shop Storefront.

175.    Despite contemporaneous communications about Gibson's purchases from Toplux's own TikTok Shop regarding violations of their TikTok shop policies to Gibson himself, in Toplux's rights owner communications to Amazon.com, Toplux knowingly made false and/or misleading written statements of fact concerning the goods sold by Gibson's Essentials, including but not limited to stating that the products listed by Gibson's Essentials "must be counterfeit products."

176.    As a direct and proximate result of Toplux's conduct and unfair competition, Gibson has suffered and will continue to suffer irreparable harm which cannot be adequately compensated by money damages alone.

177.    Upon information and belief, Toplux had no support whatsoever for the takedown notices that Toplux submitted to Amazon, and Toplux acted with the intent that Gibson's offerings be removed from the Amazon marketplace in an effort to gain more market shares by forcing consumers to purchase Toplux™ branded products directly from Toplux. By eliminating the secondary market, Toplux obtained an economic advantage by direct sales that would have otherwise gone to the secondary market. Accordingly, Toplux acted knowingly, willfully and maliciously with intent to injure Gibson.

178.    Toplux's conduct and unfair competition is willful, wanton, and malicious, and constitutes outrageous conduct entitling Gibson to an award of punitive damages in an amount to be determined at trial.

### H.  Unjust Enrichment

179.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

180.    By virtue of egregious and illegal acts of Toplux as described herein, Toplux has been unjustly enriched in an amount to be proven at trial.

181.    Toplux's retention of monies gained through their deceptive business practices, infringements and otherwise would serve to unjustly enrich Toplux's and would be contrary to the interests of justice.

182.    Toplux has benefitted from the improper, unfair, and unauthorized termination  of Gibson's marketplace and goodwill attendant thereto, as alleged herein.

183.    Toplux fully appreciates and is knowledgeable of the benefits received from Gibson as a result of Topluxs' improper actions as set forth herein.

184.    Toplux would be unjustly enriched if they were permitted to retain the benefits garnered from their improper actions,

185.    Equity and good conscience require that Toplux be required to account for and compensate Gibson an amount commensurate to the value of the benefits conferred upon them.

### I.  Unlawful, Unfair, Fraudulent Business Practices Against Toplux Under the Texas Deceptive Practices Act

186.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

187.    Toplux has committed all the acts of infringement alleged herein deliberately, willfully, maliciously and oppressively, without regard to Gibson's legal, contractual, and exclusive proprietary rights to sell products, pursuant to the First Sale Doctrine.

188.    Toplux's' acts and practices as detailed herein constitute acts of unlawful, unfair or fraudulent business acts and practices within the meaning of Texas Deceptive Practices Act ("DTPA").

189.    As alleged herein, Toplux has engaged in transactions that are in violation of numerous provisions of Texas law.

190.    Toplux's' actions and conduct as alleged herein were and are the producing cause of Gibson's damages.

191.    Pursuant to the DTPA, Gibson seeks an order from this Court prohibiting Toplux's from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and/or ordering that Toplux perform their obligations under the law and cancel any illegal obligations.

192.    Gibson additionally requests an order from this Court requiring that Toplux disgorge profits and return to pay to Gibson all of Toplux's' ill-gotten gains obtained from Gibson losing transactions due to Toplux's false reports, and/or pay restitution, including the amount of monies that should have been paid if Toplux's complied with their legal obligations, or, as equity requires.

## VI. CONDITIONS PRECEDENT

193.    All conditions precedent to Gibson's recovery in this matter have been performed or have occurred.

194.    For these reasons, Gibson applies for a Temporary Restraining Order and a Temporary Injunction, both as set forth above, and requests relief consistent with its applications, and further requests that the Topluxs be cited to appear and answer and on hearing that Gibson have judgment against the Topluxs for actual damages within the jurisdictional limits of this Court; all of Gibson's attorney's fees as allowed by law; permanent injunctive relief as described herein; prejudgment and post-judgment interest in the maximum amount allowed by law or equity, compounded as allowed by law; costs of suit; and such other and further relief in law or equity, general or special, to which Gibson may be justly entitled.

## VII.    APPLICATION FOR TEMPORARY RESTRAINING ORDER

195.    Gibson reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

196.    For the reasons given herein, and in order to prevent further irreparable injury to Gibson during the pendency of this matter, Gibson is entitled to a temporary restraining order against Toplux in order to preserve the status quo until a hearing on Gibson's Application for Temporary Injunction or trial on this case may occur. Therefore, the Toplux, their agents, servants, employees, attorneys, and those persons in active concert or participation with them must be immediately and temporarily enjoined as follows:

(a) Enjoined from directly or indirectly contacting Amazon and any other online seller and preventing Gibson from engaging in the sale of authentic goods in accordance with the First Sale Doctrine;

(b) From making False Statements, or any other statements, written or oral, which falsely indicate or imply that Gibson is not authorized to sell authentic items manufactured by Toplux;

(c) Recission of the counterfeit notice issued to Amazon; and

(d) From otherwise unfairly competing with Gibson.

197.    Gibson is likely to succeed on the merits of its lawsuit because it has lawfully sold authentic goods pursuant to the First Sale Doctrine through its marketplace.

198.    Toplux must be enjoined and restrained from their continued actions which intend to prohibit Gibson from engaging in business and taking actions which are threatening the complete closure of Gibsons online business operations.

199.    It is probable that Gibson will recover from Toplux after a trial on the merits because as alleged herein Gibson has the absolute right to engage in commerce pursuant to the first sale doctrine.

200.    If Gibson's application is not granted, harm is imminent because Gibson will be forced to close its online marketplace and will lose customers shutdown of its operations on Amazon.

201.    The harm that will result if the temporary restraining order is not issued is irreparable because Gibson cannot be adequately compensated in damages, Gibson's damages cannot be measured by any certain pecuniary standard, Gibson's business will be and already has been disrupted causing dismay, uncertainty and lost revenue of profit from Topluxs falsely stating that it is selling counterfeit items, when such items were properly purchased in the Tic-Toc marketplace.

202.    Gibson has no adequate remedy of law because Gibson's damages cannot be calculated and his entire business operations will be closed down as a direct result of the actions taken by Toplux.

203.    Plaintiff asks the Court to set its application for temporary injunction for a hearing and after the hearing, issue a temporary injunction against the Toplux.

204.    In order to preserve the status quo and to prevent damages to Gibson, during the pendency of this lawsuit, Toplux should be cited to appear and show cause why they should not be temporarily enjoined as set forth herein.

205.    Issuance of a preliminary injunction would not adversely affect the public interest.

206.    Gibson further requests that it be entitled to commence discovery immediately in aid of temporary or permanent injunction proceedings in this matter. To that end, Gibson requests that it be permitted immediately to begin discovery, including deposition discovery and obtaining documents, items, and things from the Toplux or other deponents before or at the time of such depositions in response to requests for production or other discovery requests, in aid of Gibson's application for temporary and permanent injunction, in aid of Gibson's application for temporary and permanent injunction.

## VIII.   EXEMPLARY DAMAGES

207.    Toplux acted willfully and maliciously as alleged hereon; therefore, Gibson's requests exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE §§ 41.001 *et seq*. and 134A.004 and other applicable Texas Law.

## IX. ATTORNEYS' FEES

208.    Plaintiff reiterates and adopts each and every allegation of the aforementioned paragraphs as if set forth in this paragraph verbatim.

209.    As a result of the Topluxs' conduct, Gibson has been required to engage the services of the undersigned attorney to prosecute this matter. Gibson seeks to recover from Topluxs all of its reasonable attorney's fees.

210.    By reason of the actions of Toplux, in violation of its common law and statutory obligations, Gibson has suffered and will continue to suffer extreme hardship and irreparable harm.

Without preliminary and permanent injunctive relief, Gibson will continue to suffer the following injuries, including:

     (a)  Loss of existing and future business;

     (b)  Loss of business opportunity;

     (c)  Loss of business reputation;

     (d)  Loss and misuse of confidential and proprietary information and trade secrets;

     (e)  Loss of customer goodwill, confidence and trust.

## X.  **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Gibson requests that Toplux be cited to appear and answer, and that Plaintiff have judgment against Toplux, jointly and severally, as follows:

     (a)  a special Temporary Restraining Order until final hearing (and permanent injunction thereafter) enjoining Toplux from prohibiting Gibson from selling Toplux's products on any internet platform including, but not limited to, Amazon; and

     (b)  a special Temporary Restraining Order until final hearing (and permanent injunction thereafter) enjoining Toplux from publishing any reference to counterfeit products as it relates to Gibson and that Toplux retract all notices of counterfeit products tendered to Amazon.

WHEREFORE, Gibson prays for judgment as follows:

     A.    An order declaring that Gibson has not infringed any valid and enforceable intellectual property right owned by Toplux and Gibson is allowed to sell under the First Sale Doctrine;

     B.    Preliminary and permanent injunctive relief restraining Toplux, its agents, servants, employees, successors and assigns, and all others in concert and privity with Toplux, from filing false complaints with Amazon and any other e-commerce platform;

C.       Injunctive relief requiring Toplux to rescind all complaints that they have filed against Gibson;

D.       An award of all damages that Gibson has suffered as a result of Toplux's false representations and unfair competition;

E.       An award of all damages that Gibson has suffered as a result of Toplux's tortious interference;

F.       An award of all damages that Gibson has suffered as a result of Toplux's commercial defamation;

G.       An award of all damages that Gibson has suffered as a result of Toplux's trade libel;

H.       An award of all damages and attorney's fees for violation of the Lanham Act;

I.       An award for all damages under the Texas Deceptive Practices Act;

J.       An award of all costs and attorney's fees incurred in this action;

K.       An order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Toplux's possession which rightfully belong to Gibson;

L.       An order directing Amazon to cease providing services to Toplux, including, without limitation, suspension of all user accounts and merchant storefronts; and

M.       Such other and further relief as the Court shall find just and proper.

## **DEMAND FOR JURY TRIAL**

Gibson hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated: February 27, 2026.                  Respectfully submitted,

                                            **SCHEEF & STONE, LLP**

                                            /s/ *Steven B. Coffin*
                                            **Richard J. Wallace, III**
                                            Texas State Bar No.
                                            Richard.Wallace@solidcounsel.com
                                            **Steven B. Coffin**
                                            Texas Bar No. 24126360
                                            Steven.Coffin@solidcounsel.com
                                            500 N. Akard Street, Suite 2700
                                            Dallas, Texas 75201
                                            Tel. (214) 472-2100
                                            Fax (214) 472-2150

                                            ***Attorneys For Plaintiff***